UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN EDWIN CLAY<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>DENISE LANGFORD, LT. SAVALA, CARLOS RAMOS, MARK GOMES, M. HAWTHORNE, SILVIA GARCIA,<br><br>　　　　　　　　　　Defendants. | Civil No.   3:12-cv-3074-GPC-RBB<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND SUA SPONTE DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

On December 28, 2012, plaintiff Glenn Clay ("Plaintiff"), proceeding pro se, filed a complaint under 42 U.S.C. § 1983, against defendants D. Langford, G. Savala, C. Ramos, M. Gomes, M. Hawthorne, and S. Garcia ("Defendants"). Plaintiff also filed a motion to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a). Having reviewed Plaintiff's Complaint and Motion to Proceed in Forma Pauperis, and for the reasons that follow, the Court **GRANTS** Plaintiff's Motion to Proceed in Forma Pauperis but, because Plaintiff's claims are time barred, the Court sua sponte **DISMISSES** Plaintiff's claims **WITH LEAVE TO AMEND**.

## PLAINTIFF'S ALLEGATIONS

Plaintiff filed suit following events he alleges occurred while incarcerated at R.J. Donovan Correctional Facility ("Donovan") in San Diego, California. (ECF No. 1 at 5.) Plaintiff alleges Defendants, correctional officers at Donovan, violated his rights to due process, conspired against him, committed racial discrimination, violated his freedom of association, freedom of speech, freedom from cruel and unusual punishment, deprived him of his rights, violated his right to equal protection, violated federal civil procedure, committed negligence, and discriminated him. (Id. at 4, 10, 16, 28, 41, 54.) Plaintiff contends these violations occurred when the Defendants improperly terminated him as the "Lead Man" forklift operator at the Donovan "Minimum Support Warehouse" and by refusing to reinstate him. (Id. 4-8.)

Plaintiff was employed as a forklift "Lead Man" and worked under the direct supervision of defendant Lankford. (Id. at 4). Plaintiff argues that before Lankford became the supervisor of the support warehouse, the previous supervisor advised Plaintiff that Lankford was looking to terminate Plaintiff at the first opportunity. (Id. at 94.) On March 27, 2007, while lowering a pallet in the warehouse with his forklift, Plaintiff struck a water pipe which subsequently caused it to break and leak. (Id. at 103, 129.) Plaintiff claims that, following the accident, Lankford prepared a Rules Violation Report for the destruction of state property pursuant to Section 3011 of the California Cod of Regulations, due to unsafe operation of equipment. (Id. at 4, 103.) In the Rules Violation Report, Lankford recommended that Plaintiff be "immediately removed from his present job assignment." (Id. at 75.) Having been terminated from his job at the support warehouse, Plaintiff took another job as a forklift operator in another section of the warehouse. (Id. at 21.)

Plaintiff proceeded to submit an inmate grievance against Lankford on April 3, 2007, for improperly terminating Plaintiff as a forklift operator. (Id. at 69.) The grievance was denied at the informal level on May 15, 2007. (Id.) Plaintiff contends that while his grievances were proceeding, he accepted employment in a different section of

the support warehouse to maintain his grade as a forklift worker and to gain work experience. (Id. at 56.)

A rules violation hearing commenced on April 19, 2007, before the Senior Hearing Officer, defendant Savala. (Id. at 75.) This hearing took place while Plaintiff's inmate grievance against Lankford was still under review. (Id. at 69.) Plaintiff argues he appeared at the hearing but it was postponed due to witness unavailability. (Id. at 10.) When the hearing finally occurred, Plaintiff maintains that his witnesses appeared telephonically and that Savala relayed Plaintiff's questions to the witnesses. (Id.)

Defendant Gomes, the warehouse manager, and "Mr. Manning," a Material and Store Supervisor II in the laundry department, testified on Plaintiff's behalf. (Id. at 11, 75.) Plaintiff asked Gomes, through the hearing officer, if Gomes had ever informed the inmates and staff in the warehouse about a department policy that workers would not be fired for accidents if they informed the staff of the accident. (Id. at 11.) Gomes replied, "No." (Id.) Gomes further testified that he had no knowledge of prior complaints or incidents involving the Plaintiff operating the forklift unsafely. (Id. at 75-76.) Finally, Gomes stated that the rules violation did not warrant Clay's termination as a forklift operator. (Id.).

Plaintiff next states that his supervisor, Manning, confirmed he was supervising Plaintiff at the time of the accident, that it was indeed an accident, and that Manning had never heard of Plaintiff operating the forklift unsafely. (Id.) Plaintiff maintains that, in light of the testimony by Manning and Gomes, and in "accordance with progressive discipline," the senior hearing officer reduced Plaintiff's offense from a CDCR-115 Rules Violation Report to a less-serious CDCR-128A general chrono report. (Id.) Savala determined that Plaintiff should be reinstated to his former position. (Id. at 5.) Despite this ruling, Plaintiff argues that Lankford prevented Plaintiff from resuming his duties as "Lead Man" forklift operator. (Id. at 6.)

On June 18, 2007, Lankford submitted a general chrono report requesting that Plaintiff be removed from his job assignment in the clothing department at the minimum

support facility and reassigned elsewhere. (Id. at 100.) Lankford indicated that she filed the report out of concern for her safety because Clay frequently entered her area since his reassignment, glared at her, and made inflammatory comments. (Id.) According to Lankford, Plaintiff's conduct created a hostile and inappropriate work environment for her. (Id.) Plaintiff contends that Lankford's chrono resulted in his "permanent removal from the support warehouse." (Id. at 6.) After submitting the chrono, Lankford hired a Caucasian inmate to accupy Plaintiff's former position. (Id.) Plaintiff maintains that Lankford discriminated on the basis of race because she ultimately hired an "all White" work crew. (Id. at 7.)

Plaintiff appealed his grievance to the first formal level of review on June 19, 2007. (Id. at 69.) Plaintiff's first level response appeal was denied on August 15, 2007, and, on August 20, 2007, defendant Hawthorne explained that the appeal was denied because of concerns regarding staff safety. (Id. at 69, 86.) On October 12, 2007, defendant Garcia denied Plaintiff's appeal at the second level. (Id. at 103-104.) Garcia emphasized the monetary loss to the state that was caused by Plaintiff's accident and his unsafe operation of the forklift despite prior counseling. (Id.) On December 5, 2007, Plaintiff's subsequent appeal to the director's level of review was screened out and returned to Plaintiff. (Id. at 120.)

## DISCUSSION

I.   **Motion to Proceed In Forma Pauperis**

Plaintiff moves to proceed IFP under 28 U.S.C. § 1915(a). Section 1915(a) allows a court to authorize a lawsuit's commencement without payment of the filing fee if the plaintiff submits an affidavit demonstrating his or her inability to pay the filing fee. 28 U.S.C. § 1915(a). Such affidavit must include a complete statement of the plaintiff's assets. Id.

Plaintiff has submitted an affidavit in support of his IFP motion indicating that he is currently unemployed and receives $234.00 per month from her sister. Plaintiff declares that he has no checking, savings, IRA, or money market accounts. Plaintiff

declares he does not own a vehicle, real estate, stocks, bonds, securities, or other valuable property. Plaintiff declares he has no dependents nor any outstanding debts. Plaintiff does not, however, state whether he currently pays rent or not. Based on the information Plaintiff has provided, this Court concludes Plaintiff has sufficiently demonstrated he is unable to pay the filing fee. Accordingly, the Court **GRANTS** Plaintiff's Motion to Proceed in Forma Pauperis.

**II.    Sua Sponte Review**

    **A.    Legal Standards**

        **1.    28 U.S.C. § 1915(a)**

Notwithstanding the payment of any filing fee or portion thereof, a complaint filed by any person seeking to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) is subject to a mandatory and sua sponte review and dismissal by the court to the extent it is "frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); Calhoun v. Stahl, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners."); Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc). Section 1915 mandates that a court reviewing a complaint filed pursuant to the in forma pauperis provisions of section 1915 make and rule on its own motion to dismiss before directing that the complaint be served by the U.S. Marshal pursuant to Federal Rule of Civil Procedures, Rule 4(c)(2). Lopez, 203 F.3d at 1127.

Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory.

Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

To meet the requirements of Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). However, the court must assume the truth of the facts presented and construe all inferences from them in the light most favorable to the nonmoving party when reviewing a motion to dismiss under Rule12(b)(6). Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id.; see also Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." Jones, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the court must give a pro se litigant leave to amend his complaint

"unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)). Thus, before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. Karim-Panahi, 839 F.2d at 623-24. But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. See James v. Giles, 221 F.3d 1074, 1077 (9th Cir. 2000).

### 2.     42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983 ("Section 1983"), a plaintiff must allege facts sufficient to show (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C.A. § 1983; Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

Section 1983 does not explicitly contain a statute of limitations. Wallace v. Kato, 549 U.S. 384, 387 (2007). Federal courts typically apply the personal injury limitation period and applicable tolling statutes of the state in which they sit. Hardin v. Straub, 490 U.S. 536, 539 (1989); Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009). Nonetheless, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." Wallace, 549 U.S. at 388. "Under federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." Douglas, 567 F.3d at 1109 (citing Johnson v. California, 207 F.3d 650, 653 (9th Cir. 2000)). This occurs "when the plaintiff has 'a complete and present cause of action.'" Wallace, 549 U.S. at 388 (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)).

Where a plaintiff "alleges a number of discrete acts . . . , each of which allegedly violated [the plaintiff's] constitutional rights[,]" claims based on acts that occurred beyond the statute of limitations period are time-barred. Carpinteria Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822, 829 (9th Cir. 2003) (affirming dismissal of

plaintiff's time-barred claims that were related to his timely-filed claims in a § 1983 action); see also Rivas v. Cal. Franchise Tax Bd., 619 F. Supp. 2d 994, 1002 (E.D. Cal. 2008) (refusing to apply continuing violation theory because defendants' discrete acts during an ongoing investigation gave rise to independent, actionable claims). A plaintiff may use the time-barred acts, however, "as evidence to establish motive and to put his timely-filed claims in context." Carpinteria Valley Farms, 344 F.3d at 829; Rivas, 619 F. Supp. 2d at 1002. This principle applies to alleged acts of racial discrimination "even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." AMTRAK v. Morgan, 536 U.S. 101, 113 (2002).

### 3. Statute of Limitations

In California, the statute of limitations for personal injury claims is two years, which can be tolled for up to two years during a prisoner's incarceration. Cal. Code Civ. Proc. §§ 335.1, 352.1(a). The Ninth Circuit has held that "'actual, uninterrupted incarceration is the touchstone' for applying California's tolling provision for the disability of imprisonment." Jones v. Blanas, 393 F.3d 918, 928 (9th Cir. 2004) (quoting Elliott v. City of Union City, 25 F.3d 800, 803 (9th Cir. 1994)); see also King v. Fresno Police Officers, 2008 U.S. Dist. LEXIS 27035, at *10 (E.D. Cal. Mar. 26, 2008) (concluding plaintiff was not entitled to tolling because he was not continuously incarcerated for the entire two-year period after the accrual of his cause of action). "It is the defendant's burden to prove that plaintiff filed his claims after the expiration of the statute of limitations, but it is the plaintiff's burden to show he is entitled to equitable tolling." Sumahit v. Parker, 2009 U.S. Dist. LEXIS 78973, at *5-6 (E.D. Cal. Sept. 3, 2009) (discussing the defendant's burden in the section 352.1 context).

### B. Analysis

#### 1. Lankford

Plaintiff alleges Lankford violated his rights to due process, freedom of association, free speech, freedom from cruel and unusual punishment, equal protection,

and federal civil procedure. (Dkt. No. 1 at 4.) Plaintiff further states Lankford committed the following: conspiracy, racial discrimination, deprivation of rights, negligence, and discrimination. (Id.) Plaintiff insists that Lankford engaged in racial discrimination by causing Plaintiff's termination and by hiring a Caucasian inmate to replace him to create an "all White" workforce. (Id. at 7.) Plaintiff also asserts Lankford's general chrono was submitted in retaliation for Plaintiff's grievance against her. (Id. at 6.) Plaintiff further alleges Lankford's chrono was racially motivated. (Id.)

Plaintiff's alleges his removal from the support warehouse resulted from the forklift accident which occurred on March 27, 2007. (Id. at 4, 103). Sometime after the Rule Violation Hearing that took place on April 20, 2007 – where Savala decided that Plaintiff should be reinstated as "Lead Man" forklift operator but before Lankford submitted a general chrono report against Plaintiff on June 18, 2007 – Lankford refused to reinstate Plaintiff as "Lead Man" forklift operator. (Id. at 7.)

The allegations in Count 1 have all arisen as a result of the above events, the last event occurring on June 18, 2007. It is unclear when Plaintiff was released from prison. It is also unclear whether the two-year tolling provisions applies. Jones, 393 F.3d at 927 (holding that tolling based on imprisonment does not apply to a civil detainee). Nonetheless, because Plaintiff filed his complaint on December 28, 2012, even if tolling applies, more than four years would have passed after any of the events that gave rise to Plaintiff's allegations. Plaintiff's claims are thus time-barred. This Court therefore **DISMISSES** Plaintiff's claims in Count One to the extent that they originated from events occurring on December 28, 2008, or before that date.

    **2.    Savala**

Plaintiff claims Savala violated his rights to due process, freedom of association, free speech, freedom from cruel and unusual punishment, equal protection, and federal civil procedure. (Dkt. No. 1 at 10.) Plaintiff further asserts that Savala committed the following: conspiracy, racial discrimination, deprivation of rights, negligence, and discrimination. (Id.) Plaintiff alleges that, on April 19, 2007, Savala unnecessarily

postponed the rules violation hearing, failed to stop the hearing at the required intervals, and prevented Plaintiff from interviewing witnesses in person. (Id. at 10-14.)

Because Plaintiff filed his complaint on December 28, 2012, more than four years after any of the events that gave rise to Plaintiff's allegations occurred, Plaintiff's claims are time-barred from any relief. This Court therefore **DISMISSES** Plaintiff's claims in Count Two to the extent that they originated from events occurring on December 28, 2008, or before that date.

### 3. Ramos

Plaintiff alleges Ramos violated his rights to due process, freedom from cruel and unusual punishment, equal protection, and federal civil procedure. (Id. at 16.) Plaintiff further states that Ramos committed the following: conspiracy, racial discrimination, deprivation of rights, and negligence. (Id.) Plaintiff alleges Ramos is responsible for such transgressions because he failed to use his authority to reinstate Plaintiff to his job in the warehouse. (Id.).

Plaintiff attempts to establish Ramos' liability by arguing that Ramos supported his subordinate, Lankford, during Plaintiff's initial removal on March 27, 2007, and failed to reinstate him after the disciplinary hearing on April 20, 2007. (Id.) The allegations in Count Three have all arisen as a result of the above events, the last event occurring on April 20, 2007. Because Plaintiff filed his complaint on December 28, 2012, more than four years after any of the events that gave rise to Plaintiff's allegations occurred, Plaintiff's claims are time-barred from any relief. This Court therefore **DISMISSES** Plaintiff's claims in Count Three to the extent that they originated from events occurring on December 28, 2008, or before that date.

### 4. Gomes

Plaintiff alleges Gomes violated his rights to due process, freedom of association, free speech, freedom from cruel and unusual punishment, equal protection, and federal civil procedure. (Id. at 28.) Plaintiff further states that Gomes committed the following: conspiracy, racial discrimination, negligence, and discrimination. (Id.) Plaintiff bases

these allegations on the theory that Gomes should have overruled his subordinates and reinstated Plaintiff to his position as "Lead Man" forklift operator at the support warehouse. (Id. at 30.) Plaintiff also maintains that Gomes lied while testifying at Plaintiff's disciplinary hearing. (Id. at 32.) Additionally, Plaintiff urges an investigation into the prison policy which allegedly enables a staff member to displace an inmate from his job assignment by submitting a chrono alleging safety concerns because it constitutes racial discrimination. (Id. at 35.)

The allegations in Count Four have all arisen as a result of the above events, the last event occurring on June 18, 2007, when Lankford submitted the general chrono report. Because Plaintiff filed his complaint on December 28, 2012, more than four years after any of the events that gave rise to Plaintiff's allegations occurred, Plaintiff's claims are time-barred from any relief. This Court therefore **DISMISSES** Plaintiff's claims in Count Four to the extent that they originated from events occurring on December 28, 2008, or before that date.

### 5. Hawthorne

Plaintiff alleges Hawthorne violated his rights to due process, freedom of association, free speech, freedom from cruel and unusual punishment, equal protection, and federal civil procedure. (Id. at 41.) Plaintiff further states that Hawthorne committed the following: conspiracy, negligence, and discrimination. (Id.) Plaintiff bases these allegations on Hawthorne's failure to exercise her supervisory authority. (Id.) In addition, Plaintiff contends that Hawthorne should have conducted the interview with Plaintiff in person rather than telephonically, as not doing so constituted a violation of his due process. (Id. at 42.) Plaintiff further contends that Hawthorne should have been aware of the racial discrimination occurring among staff within Donovan. (Id. at 45-46.)

Because Plaintiff filed his complaint on December 28, 2012, more than four years after any of the events that gave rise to Plaintiff's allegations occurred, Plaintiff's claims are time-barred from any relief. This Court therefore **DISMISSES** Plaintiff's claims in

Count Five to the extent that they originated from events occurring on December 28, 2008, or before that date.

### 6. Garcia

Plaintiff alleges Garcia violated his rights to due process, freedom of association, free speech, freedom from cruel and unusual punishment, equal protection, and federal civil procedure. (Id. at 54.) Plaintiff further states that Garcia committed the following: conspiracy, racial discrimination, deprivation of rights, negligence, and discrimination. (Id.) Plaintiff argues Garcia was aware that his subordinates' acts were motivated by a discriminatory intent, and is thus responsible for any and all of the transgressions that they committed under his supervision. (Id.)

Because Plaintiff filed his complaint on December 28, 2012, more than four years after any of the events that gave rise to Plaintiff's allegations occurred, Plaintiff's claims are time-barred from any relief. This Court therefore **DISMISSES** Plaintiff's claims in Count Six to the extent that they originated from events occurring on December 28, 2008, or before that date.

### CONCLUSION

Having concluded Plaintiff's claims are time barred, the Court finds it unnecessary to address the specifics of each and every claim.[1] Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Proceed in Forma Pauperis is **GRANTED**;
2. All of Plaintiff's claims are **DISMISSED**;
3. Plaintiff is granted leave to file an amended complaint to address the statute

/ / /

/ / /

---

[1] The Court notes this is the second time Plaintiff has filed these claims. Plaintiff's prior complaint was dismissed and Plaintiff was granted leave to amend his prior complaint. Plaintiff failed to do so within the time prescribed, which resulted in the dismissal of the prior case. See Clay v. Lankford, 2012 WL 947805 (S.D. Cal. March 20, 2012).

1 | of limitations issues noted herein and must file any such an amended complaint on or
2 | before **April 26, 2013**.

4 | DATED:  March 13, 2013

HON. GONZALO P. CURIEL
United States District Judge